```
         IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF KANSAS


DOUGLAS S. OLDS,              )
                              )
               Plaintiff,     )
                              )
vs.                           )   Case No. 07-1079-MLB
                              )
MICHAEL J. ASTRUE,            )
Commissioner of               )
Social Security,              )
                              )
               Defendant.     )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. Plaintiff filed their initial brief on October 15, 2007 (Doc. 14), and defendant filed their response brief on December 10, 2007 (Doc. 17). Plaintiff was given until January 14, 2008 to file a reply brief (Doc. 16), but no reply brief was filed. Thus, the matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner

1

as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.   42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does

not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II. History of case**

On September 20, 2005, administrative law judge (ALJ) George

M. Bock issued his decision (R. at 25-39). The ALJ determined that plaintiff met the requirements for disability insurance benefits through December 31, 2006 (R. at 31). Plaintiff alleged a disability onset date of October 16, 2001 (R. at 25). At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity at any time relevant to the decision (R. at 31). At step two, the ALJ found that plaintiff had the following severe impairments: personality disorder (NOS), a depressive disorder, an anxiety disorder, a somatoform disorder, a learning disorder (low average intellect), degenerative disc disease of the cervical spine, and a left knee tear status-post surgery (R. at 31). Other impairments were determined not to be severe (R. at 32). At step three, the ALJ found that plaintiff's impairments or combination of impairments do not meet or equal a listed impairment (R. at 32). After establishing plaintiff's RFC, the ALJ found at step four that plaintiff cannot perform past relevant work (R. at 36). At step five, the ALJ found that plaintiff can perform other work that exists in significant numbers in the national economy. Therefore, the ALJ concluded that plaintiff was not disabled (R. at 36-39).

**III. Did the ALJ err in his analysis of the opinions of Dr. Mintz?**

Dr. Stanley Mintz, a licensed psychologist, performed two mental status examinations on the plaintiff. The first

examination was conducted on September 11, 2003 (R. at 464-466). In that report, Dr. Mintz reported that plaintiff:

> most likely would have difficulty relating to co-workers and supervisors due to symptoms noted above. He appears able to understand simple and intermediate instructions. Concentration capacity appears variable. He may not be fully capable of handling his own funds due to a history of alcohol abuse.

(R. at 466). Dr. Mintz gave plaintiff a current GAF score of 50, and indicated that his highest GAF score in the past year was 55 (R. at 466).[1]

Dr. Mintz performed his second mental status examination on August 19, 2004, which included intelligence and personality testing (R. at 515-523). In this report, Dr. Mintz stated that plaintiff:

---

[1]GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).

> 41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job) (emphasis in original).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

6

>     presents with numerous medical symptoms.  He
>     appears to most likely have difficulty
>     currently relating to co-workers and
>     supervisors due to medical and psychological
>     symptoms.  He appears able to understand
>     simple and intermediate instructions.
>     Concentration capacity appears variable.  He
>     may not be fully capable of handling his own
>     funds due to a history of alcohol and
>     cannabis abuse.

(R. at 519).  Dr. Mintz assigned plaintiff a current and highest past year GAF score of 50 (R. at 519).

Dr. Mintz then completed a medical source statement of ability to do work-related activities (mental).  Dr. Mintz determined that plaintiff had no limitations in the ability to understand and remember short, simple instructions (R. at 520). He further found that plaintiff had slight[2] limitations in the following areas:

>  1.  Carry out short, simple instructions.
>
>  2.  Understand and remember detailed instructions.
>
>  3.  Carry out detailed instructions.
>
>  4.  The ability to make judgements on simple work-related decisions.

(R. at 520).  Dr. Mintz also found that plaintiff had moderate[3] limitations in the following areas:

---

[2]"Slight" is defined as some mild limitations in this area, but the individual can generally function well (R. at 520).

[3]"Moderate" is defined as moderate limitations in the area but the individual is still able to function satisfactorily (R. at 520).

>    1.  Interact appropriately with the public.
>
>    2.  Interact appropriately with supervisors.
>
>    3.  Interact appropriately with co-workers.
>
>    4.  Respond appropriately to work pressures in a usual work setting.
>
>    5.  Respond appropriately to changes in a routine work setting.

(R. at 521).

In his RFC findings, the ALJ included the following mental limitations:

> In addition, the claimant is moderately limited in the ability to maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with co-workers or peers without distracting them or exhibiting behavioral extremes.  The claimant, however, could perform simple, repetitive, unskilled work.

(R. at 33).

In his discussion of Dr. Mintz's reports, the ALJ stated the following:

> The claimant has been assigned a GAF of 50 (Exhibits 10F and 17F). The DSM-IV, American Psychiatric Association, states that a global assessment of functioning (GAF) ranging from 41 to 50 is consistent with a serious impairment in occupational, social, or school functioning, while a GAF of 51 to 60 represents only a moderate impairment. The

> assigned GAF is within one point of moderate
> limitations. Nevertheless, GAF scores include
> not only Axis I and II diagnoses, but Axis IV
> factors such as such social and occupational
> functioning. The assigned GAF of 50 was noted
> to represent loss of job, unemployment,
> financial difficulties, medical difficulties,
> pain difficulties, and marital difficulties,
> which are not necessary factors in the
> disability evaluation. The claimant has no
> history of psychiatric hospitalization, and
> he has not had psychotherapy. As noted above,
> the claimant demonstrates only moderate
> limitations in social functioning and
> concentration, persistence, and pace, as a
> result of a mental disorder. The undersigned,
> thus, finds that the GAF of 50 represents
> additional economic and educational factors
> and does not document serious limitations in
> mental functioning.

(R. at 33).

Plaintiff takes issue with the above analysis by the ALJ of the reports from Dr. Mintz, arguing that the ALJ took the GAF score and "nudged it up a bit or simply disregarded it," thus changing substantively the conclusions of Dr. Mintz, and therefore improperly overstepping his bounds into professional psychology (Doc. 14 at 6-7).  Plaintiff relies on the fact that a GAF score of 51-60 generally reflects moderate symptoms, while a GAF score of 41-50 generally reflects serious symptoms (Doc. 14 at 8, see footnote 1).  Plaintiff contends that the ALJ's findings of moderate mental impairments are inconsistent with the GAF scores given by Dr. Mintz.

Although Dr. Mintz gave plaintiff a GAF score of 50, he also specifically found that plaintiff had moderate limitations in

interacting with the public, supervisors, co-workers, responding to work pressures, and to changes in a routine work setting (R. at 521).  The ALJ included in his RFC findings a number of moderate limitations of mental functioning which substantially incorporated the limitations given by Dr. Mintz.  The ALJ findings also match the limitations opined by Dr. Blum, who filled out a mental RFC assessment form based on the record (R. at 469-472).  Neither Dr. Mintz nor Dr. Blum opined that plaintiff had any marked or serious limitations.

Furthermore, a low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record.  Petree v. Astrue, 2007 WL 4554293 at *8 (10th Cir. Dec. 28, 2007)  While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.  Id.; Howard v. Comm'r of Social Security, 276 F.3d 235, 241 (6th Cir. 2002).  Although a GAF score of 50 or less does suggest an inability to keep a job, standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work.  Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004); see Petree, 2007 WL 4554293 at *8.  For this reason, and in light of the opinions expressed by Dr. Mintz and Dr. Blum that plaintiff's mental limitations were only moderate, and not marked or serious, the court finds no error by the ALJ in his

analysis of the opinions of Dr. Mintz, including the GAF scores. The findings of the ALJ regarding plaintiff's mental impairments and limitations are consistent with the medical evidence in the record, including the opinions of Dr. Mintz and Dr. Blum.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be affirmed.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on January 15, 2008.

> s/John Thomas Reid
> JOHN THOMAS REID
> United States Magistrate Judge